[Nos. A070691, A071875. First Dist., Div. Five. July 31, 1996.]

WASHOE DEVELOPMENT COMPANY et al., Plaintiffs and Appellants,
v.
GUARANTY FEDERAL BANK et al., Defendants and Respondents.

COUNSEL

Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel and James J. Ficenec for Plaintiffs and Appellants.

Hale, Lane, Peek, Dennison & Howard and Donald L. Christensen for Defendants and Respondents.

OPINION

**ELY, J.**[*]—This is an action under California's Sister State Money Judgments Act, California Code of Civil Procedure section 1710.10 et seq.[1] (the Act), to enforce a Nevada judgment. Appellants Emil Damia and Washoe Development Company appeal the denial of their separate motions to vacate the entry of the Nevada judgment in California. We affirm.

*Facts*

The sister-state judgment at the center of this controversy was entered as a result of a settlement agreement among numerous parties, including all the parties to this appeal. As part of the settlement agreement dated June 1, 1987, the parties agreed to file a stipulated judgment jointly and severally against appellants for the sum of $2,925,000. The judgment was to be guaranteed by a note executed by appellants secured by deeds of trust on three properties: one property in Nevada and two properties in San Mateo County, California. The settlement agreement further recites that the note and deeds of trust are assigned to Irving Savings Association (respondents).[2]

The settlement agreement goes on to provide that the note will be paid according to specified terms and conditions. Upon a breach of the terms of payment of the judgment, the settlement agreement states that "[t]he rights, powers and remedies given to Irving Savings by this Agreement, by the Judgment and by the Deeds of Trust shall be in addition to all rights, powers and remedies given to Irving Savings by virtue of any statute or rule of law, including but not limited to the power to execute upon the Judgment." Furthermore, the settlement agreement authorizes Irving Savings to "foreclose upon the property described in the Deeds of Trust, either simultaneously or separately, and/or record the Judgment in any state and county

---

[*]Judge of the Solano Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All statutory references are to the Code of Civil Procedure.

[2]Guaranty Federal is the successor in interest to the rights of Irving Savings under the Nevada judgment. For simplification of this opinion, Irving Savings and Guaranty Federal will be referred to collectively as respondents.

*and execute upon real or personal property* of the Judgment debtors wherever situated." (Italics added.) The stipulated judgment was filed against appellants, jointly and severally, in the Second Judicial District Court in the County of Washoe of the State of Nevada on December 21, 1987, and renewed on October 26, 1994 (the Nevada judgment).

In August 1993, respondents foreclosed on the Nevada real property securing the judgment and note by exercising the power of sale contained in the deed of trust and making a credit bid. After the sale, respondents calculated the remaining amount due on the Nevada judgment to be $243,913.36. In August 1994, the Nevada judgment was renewed by court order which in turn included the amount respondents found remaining due.

Respondents then obtained judgment in California against appellants for the amount remaining unpaid on the sister-state judgment via the sister-state judgment process set forth in the Act. Appellants filed separate motions to vacate the entry of the Nevada judgment in California on the grounds that the judgment constituted the entry of a personal judgment on a debt secured by real property contrary to the antideficiency statutes of both California and Nevada. Each of the motions was denied. These consolidated appeals followed.

*Discussion*

■ Under article IV, section 1, of the United States Constitution, full faith and credit must be accorded judgments of sister states unless the rendering court lacked jurisdiction. (*Johnson* v. *Muelberger* (1951) 340 U.S. 581, 589 [95 L.Ed. 552, 558, 71 S.Ct. 474].) California courts have applied this principle. In *World Wide Imports, Inc.* v. *Bartel* (1983) 145 Cal.App.3d 1006 [193 Cal.Rptr. 830], the court stated that "the law is well established that upon a claim that a foreign judgment is not entitled to full faith and credit, the permissible scope of inquiry is limited to a determination of whether the court of forum had fundamental jurisdiction in the case. Accordingly, a judgment entered by one state must be recognized by another state if the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and opportunity to be heard." (*Id.* at p. 1010; accord, *Silbrico Corp.* v. *Raanan* (1985) 170 Cal.App.3d 202, 208 [216 Cal.Rptr. 201]; *Brinker* v. *Superior Court* (1991) 235 Cal.App.3d 1296, 1299-1300 [1 Cal.Rptr.2d 358].) It is undisputed that all the jurisdictional criteria specified in *World Wide Imports* were met in the instant case.

Partially in response to the constitutional mandate of the full faith and credit clause, in 1974 our Legislature adopted the Act. The Act provides an

expeditious and economical registration procedure for enforcing sister-state money judgments in California. The procedure offers a judgment creditor the opportunity to obtain a California judgment simply by registering his or her sister-state judgment with the specified superior court, thus avoiding the necessity of bringing a completely independent action. (See § 1710.60, subd. (a); *Review of Selected 1974 California Legislation* (1975) 6 Pacific L.J. 125, 207 et seq.) With certain statutory exceptions, the new judgment has the same effect as an original California money judgment and "may be enforced or satisfied in like manner." (§ 1710.35.) It is undisputed respondents complied with the statutory prerequisites under the Act for enforcement of the Nevada judgment in California.

■ Appellants' arguments on appeal devolve from section 1710.40 of the Act. Section 1710.40 provides that a judgment entered pursuant to the Act "may be vacated on any ground which would be a defense to an action in this state on the sister state judgment . . . ." Appellants argue that the trial court should have refused to recognize the Nevada judgment because entering a judgment against appellants personally without first exhausting the real property security runs afoul of California's antideficiency and fair value hearing statutes.[3] As stated by appellants below, "the question . . . is whether [respondents'] election to take deeds of trust to secure its judgment bring it within antideficiency statutes, thus providing [appellants] defenses to the entry of a personal judgment . . . ."

Following section 1710.40, the Law Revision Commission's comment explains that defenses to enforcement of the judgment may include the following: (1) the judgment is not final and unconditional; (2) the judgment was rendered in excess of jurisdiction; (3) the judgment was obtained by extrinsic fraud; (4) the judgment is not enforceable in the state of rendition; (5) the judgment has already been paid; (6) the plaintiff is guilty of misconduct; or (7) suit on the judgment is barred by the statute of limitations in the state where enforcement is sought. (Deering's Ann. Code Civ. Proc., § 1740.40 (1981 ed.) p. 405.)

Appellants argue that those bases which are set forth as grounds for nonrecognition of a sister-state judgment should not be interpreted as an exclusive list and are not meant to prohibit a party from raising common defenses to enforcement of money judgments. In other words, appellants

---

[3]California's antideficiency laws are intended to limit or prohibit personal judgments against borrowers in cases where the sales proceeds of the real property securing the underlying debt are insufficient to fully discharge the debt. (For an overview of California's antideficiency legislation, see *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236-1238 [44 Cal.Rptr.2d 352, 900 P.2d 601].) Appellants claim there is no substantive difference between the Nevada and California antideficiency statutes in question.

interpret section 1710.40 as creating another ground for denying full faith and credit to a sister-state judgment by allowing a superior court that has registered a sister-state judgment to set the judgment aside upon a showing that there would have been a valid defense to the judgment if the action had been initiated in California. In effect, according to appellants, every time enforcement of a sister-state judgment is sought in California under the Act, the court must reexamine the merits of the controversy and the validity of the legal principles upon which the judgment is based. This argument causes us to wonder what benefit would be derived from the Legislature's enactment of a simple and economical procedure for the transfer of sister state judgments if those judgments inevitably had to be relitigated in order to be given full faith and credit in this state?

In our view, the enumerated circumstances for vacating a sister state judgment are drafted so as to secure a judgment debtor the essentials of due process of law in the rendering state by ensuring notice and a reasonable opportunity to present every defense which under the law of the rendering state the judgment debtor is entitled to present.

Under section 1710.40, as explained by the Law Revision Commission's comment, the only potential defense available to the appellant is that "the judgment is not enforceable in the state of rendition." (Deering's Ann. Code Civ. Proc., § 1740.40 (1981 ed.) p. 405.) The trial court stated, "Basically, I think your client (appellant) has the burden to show that the judgment is not enforceable in Nevada, and that you haven't met that burden." We agree. Appellant suggests that the judgment would not be enforceable in Nevada because "apparently" there was no fair value hearing as required by Nevada statute after the foreclosure sale of the Nevada real property. Even if that was the case, in the 1994 proceeding for renewal of judgment the partial satisfaction caused by the sale of the Nevada property was set forth. There was no objection by appellant based on any claim that the judgment was invalid by reason of Nevada's deficiency statutes. As a matter of fact, Nevada counsel for appellant approved the order renewing the judgment by signature thereto. The record reflects no other suggestion of Nevada unenforceability.

There are several cases which demonstrate that the defenses raised by appellants cannot overcome the full faith and credit obligation California must accord the Nevada judgment. In *United Bank of Denver* v. *K & Y Trucking Co.* (1983) 147 Cal.App.3d 217 [195 Cal.Rptr. 49], the court determined that a Colorado judgment registered in California under the Act was entitled to full faith and credit and could not be vacated under section 1710.40 despite a claim that it violated the public policy of California, as

expressed in section 580d, prohibiting deficiency judgments following a nonjudicial foreclosure sale. It was undisputed that the Colorado court had the requisite fundamental jurisdiction in the action; it had jurisdiction over both subject matter and the judgment debtors in the case, who were given ample opportunity to defend the case. Consequently, the public policy or laws of the enforcing state regarding deficiency judgments could not contravene the full faith and credit clause of the Constitution. The court reasoned: "Deficiency judgments are only statutorily limited and are not inherently objectionable, as such judgments are not a threat to the moral or ethical standards of the citizens of this state. *We, therefore, conclude that a deficiency judgment in a sister state is not so offensive so as to compel this court to recognize an exception to the full faith and credit clause of the United States Constitution.*" (147 Cal.App.3d at p. 223, italics added.)

The case of *Silbrico Corp.* v. *Raanan, supra,* 170 Cal.App.3d 202, dealt explicitly with a sister-state money judgment entered pursuant to a settlement agreement sought to be enforced under the Act. The court considered and rejected the judgment debtor's arguments that the judgment should be vacated under section 1710.40 because the terms of the sister-state judgment constituted an unenforceable penalty under California law and failed to meet the requirements of section 1133 pertaining to judgment by confession. The court held that the judgment debtor's "so-called" defenses under section 1710.40 could not be asserted in response to the domesticated California judgment because the court rendering the judgment had fundamental jurisdiction. Consequently, the California court was required to give it full faith and credit. (170 Cal.App.3d at p. 208.)

In closing, we observe that while the Act provides a basis in law for recognizing sister-state money judgments, nowhere does the Act dictate that such a judgment must automatically and unconditionally be enforced. In other words, questions of whether a judgment should be recognized are distinct and separate from questions concerning whether such a judgment, once recognized, is entitled to enforcement. Section 1710.35 provides that a judgment entered pursuant to the Act "shall have the same effect as an original money judgment of the court and may be enforced or satisfied in like manner." We believe that section 1710.35 signals a legislative intent that the Act was not intended to alter any substantive rights or defenses which would otherwise be available to a judgment debtor or a judgment creditor in this state. (See, e.g., *Kahn* v. *Berman* (1988) 198 Cal.App.3d 1499, 1505-1507 [244 Cal.Rptr. 575] [valid sister-state judgment can only be enforced as California homestead law permits].) However, whether such a challenge could still be asserted in a subsequent proceeding is not before us, hence we need not consider the subject. What is clear, however, is that

with the litigation in its present posture, California cannot lawfully refuse to give the Nevada judgment full faith and credit.

The judgments are affirmed.

Peterson, P. J., and Haning, J., concurred.